UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


JUDY HYMES GREEN, ET AL.                    CIVIL ACTION

VERSUS                                      NO: 08-0792

CCS ENERGY SERVICES LLC, ET AL.             SECTION: R


**ORDER AND REASONS**

Before the Court are defendant CCS Energy Service's Motion
to Dismiss the Claims of Judy Hymes Green, Tasha Puckett, and
Dwight Jones (R. Doc. 10); CCS's Motion to Dismiss the Claims of
Tineka West and Shonda West (R. Doc. 39); and defendants Bordelon
Marine, Inc. and Chevron USA, Inc.'s Motion for Summary Judgment
(R. Doc. 51).  For the following reasons the Court GRANTS CCS's
first Motion to Dismiss in part and DENIES it in part; DENIES
CCS's second Motion to Dismiss; and CONTINUES Chevron and
Bordelon's Motion for Summary Judgment.


**I.    BACKGROUND**

This action arises out of the deaths of Clyde Green and
Robert Lipton on December 2, 2007.  Before their deaths, Green
and Lipton were employed by Grand Isle Shipyards, Inc. (GIS),
which is not a party to this action.  On the date of the deaths,

-1-

GIS was engaged by defendant Chevron USA, Inc. to perform tank cleaning work on the supply vessel M/V TERRY BORDELON.  Chevron had chartered the TERRY BORDELON from the vessel's owner, defendant Bordelon Marine, Inc. and brought the vessel to Venice, Louisiana for cleaning.  The vessel was moored to a dock at a facility owned and operated by defendant CCS Energy Services, and the GIS employees were sent aboard to begin their work.

The details of the deaths remain uncertain.  According to the complaints, Green and Lipton were inside the vessel's "mud tank," which is where drilling mud was stored, when they were "overcome by toxic fumes."  (Green Compl., R. Doc. 1-1 at ¶ 15; *see also* Lipton Compl., Civ. No. 08-1511, R. Doc. 1 at ¶ 14.) The complaints allege that dangerous levels of hydrogen sulfide gas were present in the tank at that time, having either been introduced via "recycled wash-down water" supplied by CCS, Chevron, and/or Bordelon or through some unknown means before the commencement of the cleaning operations.  (*See* Green Compl., R. Doc. 1-1 at ¶¶ 19-22; Lipton Compl., Civ. No. 08-1511, R. Doc. 1 at ¶¶ 13-17.)  Green and Lipton lost consciousness in the tank and passed away shortly thereafter.

Two sets of plaintiffs have filed complaints.  Mr. Green's widow, Judy Green, filed a complaint in her individual capacity, as Green's personal representative, and on behalf of his estate. (*See* Green Compl., R. Doc. 1-1 at ¶ 2.)  Green's two

stepchildren, Tasha Puckett and Dwight Jones, are also named as
plaintiffs in that complaint. (*See id.* at ¶¶ 4, 6.)  Mr.
Lipton's two daughters, Tineka and Shonda West, filed a separate
action in their individual capacities and as co-administrators of
Lipton's estate. (*See* Lipton Compl., Civ. No. 08-1511, R. Doc. 1
at ¶¶ 3, 4, 18, 19.)  The Court consolidated the two actions on
May 1, 2008. (*See* R. Doc. 17.)  The plaintiffs allege that
various negligent acts committed by CCS, Chevron, and/or Bordelon
permitted the toxic gas to be introduced into the mud tank and to
remain undetected, thereby causing the deaths of Green and
Lipton. (*See* Green Compl., R. Doc. 1-1 at ¶¶ 24-26; Lipton
Compl., Civ. No. 08-1511, R. Doc. 1 at ¶¶ 17-19.)  The plaintiffs
seek compensatory damages for wrongful death and survival as well
as punitive damages. (*See* Green Compl., R. Doc. 1-1 at ¶¶ 27-29;
Lipton Compl., Civ. No. 08-1511, R. Doc. 1 at ¶¶ 18-20.)  In
addition, the defendants have filed cross-claims against each
other for indemnity and contribution. (*See* R. Doc. 35; R. Doc.
37.)

        The defendants have filed three motions that are now before
the Court for consideration.  On April 7, 2008, CCS filed a
motion to dismiss the Green plaintiffs' complaint for failure to
state a claim upon which relief can be granted. (*See* R. Doc.
10.)  On June 2, 2008, after the two original cases were
consolidated, CCS filed a motion to dismiss the Lipton

plaintiffs' complaint for failure to state a claim.  (*See* R. Doc. 39.)  Finally, on October 14, 2008, Chevron and Bordelon filed a motion for summary judgment, seeking to have all of the claims against them dismissed.  (*See* R. Doc. 51.)  The Court now rules on these motions as follows.

## II.  LEGAL STANDARDS

### A.   12(b)(6) Motion to Dismiss

In considering a motion to dismiss, a court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 127 S. Ct. at 1965 (quotation marks, citations, and footnote omitted).

### B.   Summary Judgment

Summary judgment is appropriate when there are no genuine

issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

III. DISCUSSION

A.   Motions to Dismiss

CCS has filed two motions to dismiss under FED. R. CIV. P. 12(b)(6).  Although the motions are targeted at different sets of plaintiffs, they raise similar issues.  The Court will therefore address the two motions together.

CCS first argues that the plaintiffs' claims should be dismissed because the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.*, does not provide them with a cause of action against a third party that is neither the injured party's employer, nor the vessel owner.  The LHWCA, first enacted in 1927, provides covered maritime workers with an exclusive no-fault remedy against their employer for work-related injuries.  *See* 33 U.S.C. §§ 904, 905(a).  The Act also provides covered workers with an exclusive cause of action against a vessel and its owner for injuries caused by their negligence. *See id.* § 905(b).  Finally, section 933 of the LHWCA expressly preserves the covered worker's state law and general maritime law claims against third parties, that is, parties other than his employer and the vessel owner.  *See* 33 U.S.C. § 933; *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818-19 (2001) ("[T]he LHWCA expressly pre-empts all other claims [against the employer and vessel owner], but it expressly

-6-

*preserves* all claims against third parties."); *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 291 (5th Cir. 2008) ("This Court has recognized that '[a] person entitled to compensation under the LHWCA may both recover compensation from his or her employer [under § 904], and pursue a separate negligence action against a third party [under § 933(a)].'").

No party disputes that the decedents were covered by the LHWCA at the time of their deaths.  Moreover, it is undisputed that CCS neither employed the decedents nor owned the vessel on which they were injured.  The plaintiffs' claims against CCS therefore fall within section 933, which means that they are neither created by nor pre-empted by the LHWCA.  *See Norfolk Shipbuilding*, 532 U.S. at 818-19; *McLaurin*, 529 F.3d at 291.  The validity of these claims must be assessed under the sources of law under which they arise.

As noted, the plaintiffs have asserted both wrongful death and survival claims against CCS under the general maritime law and state law.  (*See* Green Compl., R. Doc. 1-1 at ¶ 23; Lipton Compl., Civ. No. 08-1511, R. Doc. 1 at ¶¶ 1, 2, 17.)  Both types of claims are cognizable under the general maritime law.  First, it is beyond dispute that the "negligent breach of a general maritime duty of care is actionable when it causes death," even though the decedent may in other respects be covered by the LHWCA.  *Norfolk Shipbuilding*, 532 U.S. at 812.  Both *Moragne v.*

-7-

*States Marine Lines, Inc.*, 398 U.S. 375 (1970), the Supreme Court's foundational maritime death case, and the more recent *Norfolk Shipbuilding & Drydock Co. v. Garris*, permitted the personal representative of a longshoreman to recover for wrongful death.  *See Moragne*, 398 U.S. at 376 (noting that decedent was a longshoreman); *Norfolk Shipbuilding*, 532 U.S. at 818 (noting that decedent was a "nonseaman maritime worker[]" covered by the LHWCA).  CCS's unexplained assertion that these cases are somehow distinguishable is not enough for it to prevail on a motion to dismiss.

Second, although the Supreme Court has never held that there is a general maritime right to a survival action, *see Miles v. Apex Marine Corp.*, 498 U.S. 19, 34 (1990) (reserving the issue), the Fifth Circuit and most of the other courts of appeals have so held.  *See, e.g.*, *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 893 (5th Cir. 1984); *Law v. Sea Drilling Corp.*, 523 F.2d 793, 795 (5th Cir. 1975).[1]  The Court adheres to these precedents and finds that the plaintiffs have stated valid

---

[1] *See also Barbe v. Drummond*, 507 F.2d 794, 799-800 (1st Cir. 1974); *Wahlstrom v. Kawasaki Heavy Indus., Ltd.*, 4 F.3d 1084, 1093 (2d Cir. 1993); *Ward v. Union Barge Line Corp.*, 443 F.2d 565, 569 (3d Cir. 1971), *overruled in part on other grounds by Cox v. Dravo Corp.*, 517 F.2d 620 (3d Cir. 1975) (en banc); *Greene v. Vantage S.S. Corp.*, 466 F.2d 159, 166 (4th Cir. 1972); *Spiller v. Thomas M. Lowe, Jr., & Assocs., Inc.*, 466 F.2d 903, 909 (8th Cir. 1972); *Evich v. Connelly*, 759 F.2d 1432, 1434 (9th Cir. 1985); *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1549 (11th Cir. 1987).

wrongful death and survival actions under the general maritime law, as preserved through section 933 of the LHWCA.

CCS next argues that the plaintiffs may not recover punitive damages. Relying on Louisiana law, it asserts that punitive damages are unavailable except when authorized by statute. (*See* R. Doc. 10-3 at 3; R. Doc. 39-3 at 3.) This argument is without merit, as CCS seems to recognize in one of its reply briefs. (*See* R. Doc. 29 at 3.) As discussed, the plaintiffs were LHWCA-covered workers whose causes of action arise under the general maritime law. In this context, the available remedies are governed by federal maritime law and are not restricted by state law limitations. *See Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2619 (2008) (indicating that the amount of punitive damages recoverable under maritime law "falls within a federal court's jurisdiction to decide in the manner of a common law court, subject to the authority of Congress to legislate otherwise if it disagrees with the judicial result").

In the Fifth Circuit, the availability of punitive damages for general maritime claims largely depends upon the status of the decedent. *See Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1506 (5th Cir. 1995) (en banc) ("[T]he factual setting [of *Miles v. Apex Marine Corp.*] was ... the wrongful death of a seaman, and *Miles* compels damages uniformity with the statutory schemes that cover the same factual circumstances."); *see also*

*Scarborough v. Clemco Industries*, 391 F.3d 660 (5th Cir. 2004).
With respect to longshoremen who die in state territorial waters,
this Court has held that in light of the Fifth Circuit's
continued recognition of *Sea-Land Services, Inc. v. Gaudet*, 414
U.S. 573 (1974), the longshoreman's personal representative is
not barred from recovering punitive damages under the general
maritime law.  *See Rutherford v. Mallard Bay Drilling LLC*, 2000
WL 805230 (E.D. La. June 21, 2000).  CCS has not challenged this
reasoning or otherwise demonstrated that the plaintiffs' claims
for punitive damages must be dismissed as a matter of law.[2]  Its
motions to dismiss must therefore be denied with respect to the
punitive damages claims.

        Finally, CCS argues that plaintiffs Tasha Puckett and Dwight
Jones "are not proper plaintiffs in this matter" because they are
the decedent's step-children, rather than his biological or
adopted children.  This framing of the issue obscures two
separate questions: (1) whether Puckett and Jones are proper
parties to the action and (2) whether they are beneficiaries who
may share in any recovery.  As to the first question, it is well-
settled that, absent a conflict of interest, only the personal

---

        [2] In its reply brief, CCS argues that the plaintiffs "failed
to set forth any specific factual allegations demonstrating any
willful and wanton actions or inactions on the part of CCS."  (R.
Doc. 29 at 3.)  The Court declines to address this argument
because it was raised for the first time in a reply brief.  *Cf.*
*Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir.
2008).

representative of the decedent has standing to bring an action for wrongful death or survival under the general maritime law. *See Tidewater Marine Towing, Inc. v. Dow Chemical Co., Inc.*, 689 F.2d 1251, 1253 (5th Cir. 1982).  As a technical matter, then, Puckett and Jones must be dismissed as parties to this action. Judy Green, as the decedent's personal representative, will conduct the litigation and will hold any recovery in trust for the beneficiaries.  *See Calton v. Zapata Lexington*, 811 F.2d 919, 922 (5th Cir. 1987).  If she fails in her fiduciary duty, the beneficiaries may have a cause of action against her.  *See id.*

As to the second question, there is no definitive list of beneficiaries who may recover in a general maritime wrongful death action.  The Supreme Court specifically reserved the issue when it created the general maritime wrongful death remedy.  *See Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 406-08 (1970).  Drawing guidance from the Death on the High Seas Act, which authorizes an action "for the exclusive benefit of the decedent's wife, husband, parent, child, or *dependent relative*," 46 U.S.C. App. § 761(a) (emphasis added), lower courts have generally permitted recovery by any of the decedent's dependents. *See, e.g, Miles v. Melrose*, 882 F.2d 976, 989 (5th Cir. 1989) (finding that "the line between dependents and nondependents, 'appears to be the most rational, efficient and fair.'"), *aff'd*

*sub nom Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990).[3]  Some courts have specifically approved recovery by stepchildren.  *See, e.g., Spiller v. Thomas M. Lowe, Jr., & Associates, Inc.*, 466 F.2d 903, 908 (8th Cir. 1972).  Here, Tasha Puckett and Dwight Jones have amended their complaint to allege that they were the dependent stepchildren of Clyde Green.  (*See* R. Doc. 19 at ¶¶ 1, 2.)  They have thus alleged "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 127 S. Ct. at 1974, which is sufficient to survive a 12(b)(6) motion to dismiss.

### B.   Motion for Summary Judgment

Bordelon and Chevron ("the vessel interests") seek summary judgment on all of the claims against them.  The plaintiffs have alleged that Green and Lipton's deaths were caused by the vessel interests' negligence.  CCS has asserted a claim against the vessel interests for indemnity or contribution, alleging that it was their negligence rather than CCS's that caused the plaintiffs' injuries.  Because CCS's indemnity claim is in relevant part coextensive with the plaintiffs' claims, the sole

---

[3] *See also Wahlstrom v. Kawasaki Heavy Industries, Ltd.*, 4 F.3d 1084, 1092 (2d Cir. 1993), *cert. denied*, 510 U.S. 1114 (1994); *Anderson v. Whittaker Corp.*, 894 F.2d 804, 811-12 (6th Cir. 1990); *Sistrunk v. Circle Bar Drilling Co.*, 770 F.2d 455 (5th Cir. 1985), *cert. denied*, 475 U.S. 1019 (1986); *see also Sutton v. Earles*, 26 F.3d 903, 914-17 (9th Cir. 1994) (permitting recovery by nondependent parents).

question on summary judgment is whether there exists a genuine issue of material fact concerning the liability of the vessel interests.

Section 905(b) of the LHWCA grants covered maritime workers an exclusive remedy against a "vessel" for injuries caused by the negligence of the vessel. *See* 33 U.S.C. § 905(b). The Act defines "vessel" broadly to include both the physical vessel on which the worker was injured and also "said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member." 33 U.S.C. § 902(21). No party disputes that the decedents were maritime workers covered by the LHWCA or that Bordelon and Chevron are "vessels" within the meaning of the Act. Section 905(b) is therefore the exclusive means through which the plaintiffs may recover against Bordelon and Chevron for vessel negligence. *See McLaurin*, 529 F.3d at 289.

The Supreme Court has outlined three general duties that vessel owners and charterers owe to covered workers under section 905(b):

> The first, which courts have come to call the "turnover duty," relates to the condition of the ship upon the commencement of stevedoring operations. The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control of the vessel." The third duty, called the "duty to intervene," concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore.

*Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 98 (1994)
(citing *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S.
156 (1981)); *see also Kirksey v. Tonghai Maritime*, 535 F.3d 388,
391 (5th Cir. 2008).  Though the principal cases discuss these
duties in the context of a shipowner's relationship with
stevedores and longshoremen, the Fifth Circuit has held that the
rationale of those cases "clearly applies to any independent
contractor and its harborworker employees covered by the LHWCA
and working aboard ship." *Hill v. Texaco, Inc.*, 674 F.2d 447,
451 (5th Cir. 1982); *see also Burchett v. Cargill, Inc.*, 48 F.3d
173, 178 n.3 (5th Cir. 1995).

The vessel interests argue that the plaintiffs cannot show
that there is a genuine issue of material fact with respect to
any of these duties.  CCS, rather than producing specific facts
or directly addressing the vessel interests' arguments, responds
that the necessary facts have not yet been discovered.  According
to CCS, "[d]iscovery is ongoing and is far from being complete.
Too many material factual issues remain unanswered." (R. Doc.
61-1 at 3.)  The Court will treat this as a request for
additional time pursuant to FED. R. CIV. P. 56(f), which provides
in relevant part:

> If a party opposing the motion shows by affidavit that, for
> specified reasons, it cannot present facts essential to
> justify its opposition, the court may:
>
> (1) deny the motion;

-14-

(2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(3) issue any other just order.

Rule 56(f) is designed to safeguard against a premature or improvident grant of summary judgment. *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citing 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2740 (2d ed. 1983)).  To obtain a Rule 56(f) continuance, the nonmovant must present specific facts explaining its inability to make a substantive response as required by Rule 56(e) and demonstrating "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Washington*, 901 F.2d at 1285 (quoting *Securities and Exchange Commission v. Spence & Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir. 1980)).  The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts.  *Id*. (citing *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 873 (5th Cir. 1978)).

CCS lists a number of specific undiscovered facts that it believes will enable it to respond to the vessel interests' motion, including:

> the causes of death of each decedent, the potential toxicity or danger posed by the products involved that were owned by Chevron, any knowledge of Chevron as to the potential dangers, and Chevron's actual involvement regarding the work being conducted.

-15-

(R. Doc. 61-1 at 3.)  It has attached documents indicating that it has requested, but has not received, information pertaining to the toxicity of the drilling mud, Chevron's policies and practices with respect to tank cleaners, and Chevron's relationship with a subcontractor that allegedly tested the mud before the cleaning operation started.  (*See* R. Doc. 61-3 at 1.)  CCS's theory is that "the drilling mud (which was owned by Chevron), or some other substance within the vessel that was owned by Chevron, either caused or played a part in the deaths" of Green and Lipton.  (*Id.* at 4.)

        The Court finds that discovery of these facts may enable CCS and the plaintiffs "to rebut the movant's showing of the absence of a genuine issue of fact." *Washington*, 901 F.2d at 1285.  In order to carry their burden on summary judgment, the plaintiffs and CCS must show that there is a genuine issue of material fact as to whether the vessel interests breached their duties under section 905(b).  This, in turn, will require the submission of evidence relating to the condition of the mud tank at the time of turnover, the role of the vessel interests in the cleaning operations, the vessel interests' knowledge of the conditions inside the mud tank, and so forth.  Much of that information is likely to be in the vessel interests' exclusive possession.  CCS has shown that it has made efforts to obtain relevant information but that it has been unsuccessful so far.  In light of these

-16-

considerations, it would be premature for the Court to rule on the motion for summary judgment at this point.

## IV.   CONCLUSION

For the foregoing reasons, CCS's first Motion to Dismiss (R. Doc. 10) is DENIED except with respect to the participation of Tasha Puckett and Dwight Jones as parties in this litigation. Puckett and Jones are hereby dismissed from the proceedings.

Further, CCS's second Motion to Dismiss (R. Doc. 39) is DENIED.

Finally, Chevron and Bordelon's Motion for Summary Judgment (R. Doc. 51) is CONTINUED.  Plaintiffs and CCS shall have until FRIDAY, FEBRUARY 6, 2009, to conduct discovery on the issue of whether Chevron and Bordelon have breached their duties under 33 U.S.C. § 905(b).  They shall submit memoranda in opposition to Chevron and Bordelon's motion no later than 2:00 p.m. on TUESDAY, FEBRUARY 17, 2009.

IT IS SO ORDERED.

New Orleans, Louisiana, this <u>9th</u> day of December, 2008.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

-17-